**William L. FISCHBEIN and Cesar G. Manent, individually and on behalf of a class of persons similarly situated, Plaintiffs–Appellants,**

v.

**FIRST CHICAGO NBD CORPORATION, Defendant–Appellee.**

No. 98–1889.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 29, 1998.

Decided Dec. 1, 1998.

Robert D. Allison, Chicago, IL, Edwin J. Mills, Stull, Stull & Brody, New York, NY, for Plaintiffs–Appellants.

Lynn A. Goldstein, First Nat. Bank of Chicago, Chicago, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and WOOD, JR., and MANION, Circuit Judges.

POSNER, Chief Judge.

The plaintiffs appeal from the grant of summary judgment to the defendant in a diversity breach of contract suit governed by Delaware law. The facts are not in dispute, and we offer an abbreviated and simplified summary. The plaintiffs were employed by First Chicago Corporation. A stock incentive plan gave them stock options that could be exercised at specified dates if they were still employed by the corporation. In 1995, First Chicago merged with NBD Bancorp. The merger agreement provided that NBD would be the surviving corporation (renamed First Chicago NBD Corporation), but that First Chicago's shareholders would own 51 percent of the corporation's stock and would elect a majority of the board of directors. The plaintiffs were terminated after the merger (for reasons unrelated to this suit), and were not permitted to exercise their stock options because the exercise date had not arrived. They base their challenge to this decision on a provision of the stock

incentive plan that makes the options exercisable immediately if there is a "change in control" of First Chicago.

■ The plan specifies various ways in which such a change can occur. One is if the incumbent directors (or new directors approved by them) cease to make up a majority of "the Board." The directors of First Chicago on the eve of the merger became a majority of the board of directors of the surviving corporation, but the plaintiffs argue that the word "Board," which the stock incentive plan does not define, refers only to First Chicago's board, which ceased to exist—because First Chicago ceased to exist—when the merger took place.

This interpretation makes very little sense, not only linguistically (if Congress ceased to exist, would we say that as a result the Republicans had lost their majority?), but also practically. A change of corporate control takes place when a majority of the corporation's existing directors are replaced. That did not happen here. The same people who controlled the assets, the business, of First Chicago before the merger controlled those assets, that business, after the merger. Their control was not loosened by the fact that the pool of assets had grown and that the charter and bylaws that the directors were operating under had changed because NBD Bancorp's charter and bylaws were different from First Chicago's.

There are two other objections to the plaintiffs' interpretation. The first comes from the fact that it requires reading the word "Board" in the quoted provision to mean "Board of Directors of First Chicago" but elsewhere in the stock incentive plan to mean "Board of Directors of First Chicago NBD Corporation," because the plan, which the plaintiffs conceded survived the merger, assigns administrative responsibilities to the "Board." A word can bear different meanings, depending on context, in different parts of the same document; but there is no reason to assign different meanings to "Board" in its different incarnations in the stock incentive plan.

■ The second objection to the plaintiffs' interpretation is related to another type of change of control specified by the plan, namely the approval by First Chicago's shareholders of a merger (or consolidation or reorganization, but we needn't consider these) in which the shareholders do not receive a majority of shares in the resulting corporation. The implication is that if First Chicago's shareholders do receive a majority of those shares, which is what happened here, there is no change of control within the meaning of the plan. On the plaintiffs' reading, however, the only time a merger is *not* a change of control is when First Chicago is the surviving entity, for it is only then that its board of directors survives, and the disappearance of the board incidental to the disappearance of First Chicago as a separate corporation is in the plaintiffs' view a change of control per se. But whether the acquiring or acquired corporation is the surviving entity in a merger has nothing intrinsically to do with control. "In corporate law, little or nothing turns on who is denominated the 'survivor' in a merger." *National Distillers & Chemical Corp. v. First National Bank*, 804 F.2d 978, 982 (7th Cir.1986); *United States Shoe Corp. v. Hackett*, 793 F.2d 161, 164 (7th Cir.1986). First Chicago might just prefer some provisions in the charter of the acquired corporation to the corresponding provisions in its own charter and decide therefore to merge itself into the acquired corporation rather than merge the acquired corporation into itself. Cf. *id.* at 164; *Truck Components Inc. v. Beatrice Co.*, 143 F.3d 1057, 1060 (7th Cir.1998). The decision would be unrelated to any purpose that can be assigned to the change of control provision in the stock incentive plan. We add that under Delaware law, the board of directors' interpretation of the plan as not entitling the plaintiffs to acceleration of the exercise dates of their stock options is entitled to some, but in this case unnecessary, deference from the courts. E.g., *Paramount Communications Inc. v. QVC Network Inc.*, 637 A.2d 34, 46 n. 17 (Del.1994).

AFFIRMED.